# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| MISSOURI COALITION FOR THE ENVIRONMENT, <br><br> *Plaintiff*, <br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, <br><br> *Defendant*. | Civil Action No. 18-663 (TJK) |

## MEMORANDUM OPINION

Missouri Coalition for the Environment routinely submits requests under the Freedom of Information Act for records relating to a Clean Water Act permit program run by the Army Corps of Engineers. It uses those records to comment on permit applications and keep track of permits issued in Missouri. This case is about how the Corps has responded to Missouri Coalition's FOIA requests for records relating to *pending* permit applications. Under those circumstances, the Corps has withheld all otherwise responsive records, claiming that they were exempt from disclosure because they were "pre-decisional" and part of the agency's "deliberative process."

Missouri Coalition challenged those responses, arguing that the Corps was withholding non-agency records—such as those submitted by the permit applicant—to which the claimed exemption did not apply. And in two instances, Missouri Coalition brought a FOIA case seeking the withheld records, and the Corps eventually released them. But the Corps continued to withhold non-agency records in response to Missouri Coalition's requests, and so it brought this action. Missouri Coalition alleges that the Corps employs a "policy or practice" that violates FOIA, and it seeks both declaratory judgment and an injunction to prevent the Corps from

relying on that purported policy or practice in response to future requests. The Corps, for its part, does not dispute that the prior withholdings identified by Missouri Coalition were unlawful, but it denies that it ever employed a policy or practice as alleged. Rather, it insists that its withholdings were caused by the isolated mistakes of individual employees that it has since rectified. For that reason, it maintains that Missouri Coalition is not entitled to the equitable relief sought.

The parties have cross-moved for summary judgment. For the reasons explained below, Missouri Coalition's motion will be granted, and the Corps' motion will be denied.[1]

## I. Factual Background

Missouri Coalition for the Environment (MCE) is an environmental organization based in St. Louis, Missouri.[2] Navarro Decl. ¶ 2. The group advocates for the preservation of Missouri's wetlands and waterbodies, among other environmental causes. *Id.* ¶ 3. That effort often involves commenting on pending applications under the Section 404 Clean Water Act permit program run by the United States Army Corps of Engineers ("the Corps"). *Id.* ¶ 4; Levins Decl. ¶ 3 n.1. Under the Section 404 program, the Corps "issue[s] permits, after notice and opportunity for public hearings[,] for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a). Within each state, the Corps is divided into districts, and each district handles the permitting program for sites within its jurisdiction.

---

[1] In ruling on these motions, the Court considered all relevant filings, including but not limited to the following: ECF No. 1 ("Compl."); ECF No. 6 ("Ans."); ECF No. 16 ("Def.'s MSJ"); ECF No. 16-1 ("Def.'s Facts Stmt."); ECF No. 16-2 ("Bouchard Decl."); ECF No. 16-3 ("Levins Decl."); ECF No. 17 at 2–15 ("Pl.'s Facts Stmt."); ECF No. 17 at 16–35 ("Pl.'s MSJ"); ECF No. 17-1 ("Pl.'s Ex. A"); ECF No. 17-2 ("Pl.'s Ex. B"); ECF No. 17-3 ("Pl.'s Ex. C"); ECF No. 17-4 ("Pl.'s Ex. D"); ECF No. 17-5 ("Pl.'s Ex. E"); ECF No. 17-6 ("Pl.'s Ex. F"); ECF No. 17-7 ("Navarro Decl."); ECF No. 19 ("Def.'s Opp'n"); ECF No. 19-1 ("2d Levins Decl."); ECF No. 19-2 ("2d Bouchard Decl."); and ECF No. 21 ("Pl.'s Reply").

[2] The facts recounted are not in dispute unless otherwise noted.

*See* Levins Decl. ¶ 3 n.1. Missouri is comprised of five Corps districts, two of which, the Little Rock District and the St. Louis District, are relevant here. *See* Def.'s MSJ at 9.

When a district receives a permit application, it issues a "public notice," which includes a general description of the proposed activity, a site plan and elevation map, and other details about the project. *See* 33 C.F.R. § 325.3(a). To better prepare its comments on those pending applications, however, MCE often submits requests to the Corps under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking documents in the application files not released with the public notices. *See* Navarro Decl. ¶ 4. The Corps' responses to several of those requests, described below, are the basis for this action.

A.   **MCE's FOIA Requests**

1.   **FOIA Request 1**

In March 2013, MCE submitted a request to the St. Louis District seeking records relating to sixteen permit applications filed in that district, three of which were still pending. *See* Pl.'s Ex. A at 1–4; Def.'s Facts Stmt. ¶ 10; Pl.'s Facts Stmt. ¶ 41. The Corps withheld the application files for those three permits, citing FOIA Exemption 5, *see* Pl.'s Facts Stmt. ¶ 41, which exempts from disclosure "inter-agency [and] intra-agency memorandums or letters" that fall within the scope of the deliberative-process privilege, 5 U.S.C. § 552(b)(5); *see also Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). MCE filed an administrative appeal of that decision with the Corps in November 2013, arguing that the Corps improperly applied Exemption 5. Pl.'s Facts Stmt. ¶ 42. Over a year later, and after hearing no response from the Corps, MCE sued for the responsive records in December 2014. Def.'s Facts Stmt. ¶ 12; Pl.'s Ex. A at 5–11. The case was dismissed in March 2015 after the Corps allowed MCE to review the three application files. Def.'s Facts Stmt. ¶ 13; Pl.'s Ex. A at 12–14.

3

2. **FOIA Request 2**

In August 2014, MCE submitted a request to the Little Rock District seeking documents relating to a pending permit application. Pl.'s Facts Stmt. ¶ 45; Pl.'s Ex. B at 1–3. Less than two weeks later, MCE received an email from a paralegal with the Little Rock District, stating that the requested information could not be released because it was "pre-decisional and a work product." Pl.'s Ex. B at 8. MCE sent a letter to the Little Rock District disputing that decision, arguing that at least some of the documents must have been generated by entities other than the agency, including those submitted by the permit applicant itself, and that those documents could not be withheld under Exemption 5. *See id.* at 11–14. In October 2014, MCE received a response from a Corps supervisor informing it that the documents that the Little Rock District would not release were being withheld under Exemption 5 because they were "intra- and inter-agency documents" and "contain[ed] information that [was] part of the internal process" of the Corps. *Id.* at 15–17. MCE administratively appealed that decision in November of that year. *See id.* at 18–19. About five months later, after receiving no response from the Corps, MCE sued. *See id.* at 20–25. The parties again reached a settlement in which the Corps agreed to release the requested documents, and the case was dismissed in July 2015. Def.'s Facts Stmt. ¶ 17; Pl.'s Ex. B at 26–28.

3. **FOIA Request 3**

In December 2015, MCE submitted another request to the Little Rock District seeking records related to a pending permit application. *See* Pl.'s Ex. C at 1–3. About three months later, MCE received an email from a second paralegal with the Little Rock District, providing some records but withholding several others under Exemption 5. *See id.* at 5. MCE replied to the email and asked whether the withheld documents were created by the applicant rather than the Corps, in which case, MCE argued, they would not be subject to Exemption 5. *See id.* at 4.

4

Although she acknowledged receiving the email, the paralegal never followed up to clarify. *See id.* In April 2016, MCE filed an administrative appeal disputing the withholding of those documents under Exemption 5. *See id.* at 6–8. Two years later, and after MCE brought this case, the Corps released the withheld documents to MCE. *See id.* at 10–11.

### 4. FOIA Request 4

In March 2017, MCE sent a request to the St. Louis District seeking documents relating to a pending permit application. *See* Pl.'s Ex. E at 1–3. Less than two weeks later, MCE received a response from William Levins, District Counsel for the St. Louis District, releasing a "cover letter from the Corps to the applicant, attaching the public notice, a list of parties to whom the notice was being sent, and the public notice itself." Pl.'s Facts Stmt. ¶ 63; *see* Pl.'s Ex. E at 4–5. Levins stated that the Corps was withholding the rest of the documents in the application file "pursuant to Exemption 5 . . . , [d]eliberative process, [p]re-decisional." Pl.'s Ex. E at 4. MCE did not file an administrative appeal. *See* Pl.'s Facts Stmt. ¶ 23.

### 5. FOIA Request 5

In October 2017, MCE sent a request to the St. Louis District seeking documents relating to a different pending permit application. *See* Pl.'s Ex. F at 1–3. Less than a month later, MCE received a "no records response" letter from Levins. *See id.* at 4–5. MCE emailed a third paralegal with the St. Louis District, who had forwarded the letter from Levins, asking her to clarify whether Levins's letter meant that the Corps found no responsive documents or that it was withholding responsive documents under one of FOIA's exemptions. *See id.* at 6. In December of that year, MCE received another letter from Levins clarifying that the Corps was withholding records under Exemption 5. *See id.* at 10–11. He explained that the Corps "cannot release records within an active file because those records are still deliberative in nature." *Id.* at 10. MCE did not appeal. *See* Pl.'s Facts Stmt. ¶ 26.

5

### 6. FOIA Request 6

On March 10, 2018, MCE submitted a request to the Little Rock District seeking records pertaining to an approved permit. *See* Pl.'s Ex. D at 1–3. On March 26, 2018, days after MCE filed its complaint in this action, MCE amended that request to also seek records pertaining to a pending permit application recently presented for public comment. *See id.* at 4–6. On April 23, 2018, the Corps released responsive documents, withholding some records under FOIA Exemptions 3 and 6. *See* Pl.'s Ex. D at 7 (citing 5 U.S.C. § 552(b)(3), (6)). The Corps did not claim to withhold any materials under Exemption 5. *See id.*

### B.   Changes to the Little Rock and St. Louis Districts' FOIA Procedures

According to the Corps, the St. Louis District was engaged in a "re-evaluati[on] [of] its FOIA processes and procedures" over the course of 2016 and 2017. Levins Decl. ¶¶ 1–2. In fact, Levins asserts that the St. Louis District was contacted by other FOIA requesters, in addition to MCE, disputing the district's withholdings under Exemption 5 of application files for pending permit applications. *Id.* ¶ 3. After conducting an "informal review," Levins states, the St. Louis District determined that "during the transition of paralegals" after the district's longtime paralegal left in the fall of 2016, the district "had not been applying the Exemption 5 Deliberative Process Privilege as uniformly or in the same manner as it had before the departure of the primary FOIA paralegal." *Id.* ¶ 4. Levins therefore issued the following "clarification" to the district's staff on March 22, 2018:

> Exemption 5 primarily extends to intra- or interagency documents- and the permit application itself is not intra/inter-agency. However, the following exemptions should be considered when reviewing the application for full release: 1) closely looking at Exemption 3, which requires redaction of cultural resources locations, etc.; 2) looking at Exemption 4 for a commercial interest held by the person/entity submitting the application; and 4) looking at Exemption 7 (if with respect to enforcement of regulatory actions).

*Id.* ¶ 5.

6

In a separate declaration, Jacqueline Bouchard, District Counsel for the Little Rock District, acknowledges that "[i]n some initial denial determinations, the Little Rock District withheld records relating to a pending permit application under Exemption 5." Bouchard Decl. ¶ 11. And she states that upon "[f]urther research," the district determined "that some records withheld were not covered by th[at] exemption because they were not properly characterized as intra- or inter-agency documents." *Id.* She states that she thus "reiterated to [her] FOIA staff and the relevant regulatory personnel who assist with FOIA requests the proper scope of Exemption 5," and she declares that "[t]he Little Rock District will not withhold under Exemption 5 records which are not intra- or inter-agency communications." *Id.* ¶ 12.

### C. This Action

MCE commenced this action on March 23, 2018, filing a complaint alleging, in a single count, that the Corps "has engaged in a policy or practice of wrongfully denying document production requests for documents connected to pending original Section 404 permit applications" on the ground that they are "exempt from disclosure under FOIA Exemption 5 because they are 'predecisional' and [denying] access to those documents even though [they] are neither 'inter-agency or intra-agency memoranda or letters,' nor privileged." Compl. ¶¶ 40–41; *see also id.* ¶¶ 49–62. MCE seeks a declaratory judgment that the Corps' alleged practice is unlawful under FOIA and an injunction ordering the Corps to refrain from any future activity inconsistent with that judgment. *See id.* ¶¶ 63–64. Both parties moved for summary judgment. *See* Pl.'s MSJ; Def.'s MSJ.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on such a motion, the Court "must

7

draw all justifiable inferences in favor of the nonmoving party and . . . accept the nonmoving party's evidence as true." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. And a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To demonstrate that "a fact cannot be or is genuinely disputed," a party must cite to "particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

The burden is on the moving party to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But in opposing a motion for summary judgment, the nonmoving party "may not rest upon mere allegation or denials," and must instead "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Congress enacted FOIA in 1966 to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011)). As applicable here, one of those exemptions—Exemption 5—provides that "inter-agency or intra-agency memorandums or letters that would not be available by law to

a party other than an agency in litigation with the agency" are exempt from disclosure. 5 U.S.C. § 552(b)(5).

## III. Analysis

For each FOIA request identified in the complaint, MCE has either received the documents that the Corps withheld or the Corps has offered to produce them upon request. *See* Def.'s Facts Stmt. ¶¶ 13, 17; Pl.'s Facts Stmt. ¶¶ 57–61; Def.'s MSJ at 11–12 & n.8. But MCE contends that the Corps' initial denials of those requests were products of a broader policy or practice to improperly withhold application files for pending Section 404 permit applications under Exemption 5. Compl. ¶¶ 40–41. And this policy or practice, MCE alleges, will continue to harm them as they request access to those files in the future. *Id.* ¶¶ 42–48. The D.C. Circuit has recognized that plaintiffs who make such a claim—often termed a "policy-or-practice" claim—may still be entitled to equitable relief even though they have received all the requested records improperly withheld. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018); *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 163–64 (D.C. Cir. 2012).

In response, the Corps does not dispute that it misapplied Exemption 5 to non-agency documents when responding to the five FOIA requests identified in the complaint.[3] *See* Def.'s MSJ at 1, 6; *see also* Bouchard Decl. ¶ 11; Levins Decl. ¶¶ 3–6. Nor could it, as the Supreme Court has made clear that for an agency to withhold a document under Exemption 5, "its source must be a Government agency." *Klamath Water Users*, 532 U.S. at 8. And it is also undisputed

---

[3] As noted above, the Corps did not withhold any records under Exemption 5 when it responded to MCE's FOIA Request 6, which MCE had amended after the start of this lawsuit to seek the application file for a pending permit application. *See* Pl.'s Ex. D at 7–13.

9

that MCE will continue to file FOIA requests with the Corps seeking documents related to pending Section 404 permit applications. *See* Navarro Decl. ¶ 6; *see also* Def.'s MSJ at 10–11. Therefore, the key question here is whether the Corps' prior unlawful withholdings under FOIA reflect a policy or practice or were merely isolated mistakes. In other words, because the parties do not dispute the unlawfulness of the Corps' conduct under FOIA, this case turns on whether that conduct was the result of a policy or practice, and whether granting MCE equitable relief to prevent further injury from that policy or practice is warranted. *See Payne*, 837 F.2d at 491, 494.

Accordingly, the Court first considers whether MCE has shown that it is entitled to summary judgment on its claim that the Corps maintains an unlawful policy or practice under FOIA. Finding that it does, the Court then addresses the appropriate form of equitable relief, concluding that a declaratory judgment, and not an injunction, is warranted.

**A.      Whether the Corps Maintains an Unlawful Policy or Practice**

MCE asserts that the Corps has followed a policy or practice of unlawfully withholding non-agency documents in the pending permit application files under Exemption 5. In response, the Corps disclaims that it ever maintained such a policy or practice and asserts that it "has a record of releasing in full compliance with FOIA." Def.'s MSJ at 8. The instances identified by MCE, it insists, were isolated to only two districts and resulted from inadvertent mistakes by individual employees rather than any district-wide or Corps-wide policy. *Id.* at 9–10. MCE disputes that characterization, arguing that the evidence shows that the Corps followed an informal policy of denying access to application files for pending permit applications under Exemption 5. *See* Pl.'s MSJ at 7–10. And the Corps' explanation that the unlawful withholdings were isolated mistakes, MCE asserts, is belied by the record, including the consistency with which the Corps made those withholdings over time, even when MCE's requests were handled

by different Corps employees. *See id.* at 9–10. The Court, upon careful review of the record, agrees with MCE, and finds that it is entitled to judgment as a matter of law on its claim.

A party that has been unlawfully denied access to records under FOIA may, even after those records are disclosed, continue to seek equitable relief from the agency by alleging that the unlawful denial stemmed from a "*policy or practice* [that] will impair the party's lawful access to information in the future." *Payne*, 837 F.2d at 491. The policy or practice may be "informal, rather than articulated in regulations or an official statement of policy," but the plaintiff must show that the refusals were the product of "a policy or practice of . . . fail[ing] to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials." *Id.*

MCE has provided undisputed evidence of five instances, across two Corps districts, over four years, in which the Corps improperly withheld the same types of documents under Exemption 5. Each denial was based on the same improper application of Exemption 5 to documents in an application file for a pending Section 404 permit. *See* Pl.'s Facts Stmt. ¶¶ 41–42; Pl.'s Ex. B at 8; Pl.'s Ex. C at 4–5; Pl.'s Ex. E at 4; Pl.'s Ex. F at 10. And the conduct continued, in both districts, even after MCE filed two lawsuits over the Corps' use of Exemption 5. *See* Pl.'s Ex. A at 5–11; Pl.'s Ex. B at 20–25.

Moreover, these decisions often involved multiple employees. Indeed, in one instance, a superior reaffirmed an initial determination made by a paralegal. *See* Pl.'s Ex. B at 8 (email from Little Rock District paralegal denying access because documents were "pre-decisional and a work product"); *id.* at 11–13 (letter from MCE disputing any withholding based on Exemption 5); *id.* at 15–17 (letter from a different Corps employee confirming that the documents were being withheld under Exemption 5 because they were "part of the deliberative process"). And in another, after MCE disputed the Corps' erroneous statement that there were "no records"

responsive to MCE's request to view a pending permit application, *see* Pl.'s Ex. F at 8–9, MCE received a letter signed by Levins acknowledging that mistake, but again specifically (and erroneously) invoking Exemption 5, *see id.* at 10.

The Corps' record of repeated and almost identical FOIA violations leads to the unavoidable conclusion that its decisions resulted from a policy or practice to withhold materials in the application files of pending Section 404 permit applications, even if those materials were not inter- or intra-agency records. *See Muckrock, LLC. v. CIA*, 300 F. Supp. 3d 108, 135–36 (D.D.C. 2018) (finding that the CIA had employed an unlawful FOIA policy based on its identical response to four similar requests for email records). The Court cannot reasonably conclude that those decisions were isolated mistakes. And because, as the parties agree, withholding materials on that basis violates FOIA, the policy or practice is unlawful.

The Corps provides no evidence that raises a genuine dispute to the contrary. To support its claim that these denials were merely one-off mistakes, the Corps relies mainly on Levins's declaration. *See* Def.'s MSJ at 9. In that declaration, he asserts that an informal review of the St. Louis District's FOIA procedures "indicated that, during the transition of paralegals [in 2016 and 2017], the District had not been applying the Exemption 5 Deliberative Process Privilege as uniformly or in the same manner as it had before the departure of the primary FOIA paralegal in the Fall of 2016." Levins Decl. ¶ 4. The Court has no reason to doubt that conclusion. But the St. Louis District applied Exemption 5 to non-agency documents related to a pending Section 404 permit as early as 2013, three years before the paralegal turnover purportedly began. *See* Pl.'s Ex. A at 5–11; Pl.'s Facts Stmt. ¶ 41. Indeed, that denial prompted MCE's first lawsuit against the Corps on this issue. *See* Pl.'s Ex. A at 5–11. And for the two St. Louis District requests made in 2017, when the "transition of paralegals" was occurring, the letters explaining

why the Corps was withholding records under Exemption 5 were signed *by Levins*, and in one instance *after* MCE brought the request to Levins's attention and sought clarification about his response. *See* Pl.'s Ex. E at 4–5; Pl.'s Ex. F at 4–11. Moreover, neither Levins's declaration nor Bouchard's offers any similar explanation for the identical responses to requests made to the Little Rock District, where at least four different employees were involved in two separate decisions to improperly withhold application files under Exemption 5. *See* Pl.'s Ex. B at 4, 8, 15–17; Pl.'s Ex. C at 4–5.

In fact, it is remarkable what Levins's and Bouchard's declarations do not say. Upon close reading, they never dispute MCE's claim that the Corps followed a policy or practice of applying Exemption 5 to non-agency documents in application files for pending permits. They both merely state that, upon review, they determined that they had improperly applied Exemption 5 to prior requests and were taking corrective action as a result. *See* Levins Decl. ¶¶ 4–5; Bouchard Decl. ¶¶ 10–11. Indeed, even in the Levins declaration on which the Corps so heavily relies, he states only that the Corps determined that it had not been applying Exemption 5 "as uniformly or in the same manner as it had" before the personnel transition; he does not deny that the Corps has a policy or practice of applying Exemption 5 to non-agency records. Levins Decl. ¶ 4. Beyond those declarations, it is also telling that the Corps has provided *no examples* of times when it *did* release non-agency records in application files for pending Section 404 permits. If, as the Corps now claims, the improper withholdings under Exemption 5 were merely isolated mistakes, examples of times when it released the application files for pending permits should abound. But the Corps offers none.[4]

---

[4] MCE forthrightly admits in its motion for summary judgment that in response to a request submitted in December 2013, the St. Louis District did release documents from the file of a

13

To discount the weight of MCE's evidence, the Corps contends that the St. Louis and Little Rock Districts must be treated separately, and that MCE must show that each district independently had a policy or practice that violated FOIA. *See* Def.'s Opp'n at 2–5. Applying that framework, the Corps argues, MCE has only provided two instances of this alleged practice in Little Rock and three in St. Louis, hardly sufficient to demonstrate a pattern. *Id.* But the Court fails to see why MCE's allegations must be partitioned as the Corps insists. MCE does not limit its claim for relief to just those two districts in its complaint, and instead specifically alleges that the Corps as a whole has employed the unlawful policy or practice at issue in this suit. *See* Compl. ¶¶ 54, 61, 63. And surely, a plaintiff need not proffer instances of an alleged policy or practice in every single Corps district to show that a policy or practice exists. As it happens, MCE submitted its requests to the St. Louis and Little Rock Districts, and it is those districts that applied this alleged policy or practice to its requests. If anything, the fact that MCE received unlawful responses from two different Corps districts only further evidences that the Corps maintained a policy or practice and that the decisions to withhold the records at issue were not isolated mistakes.

At bottom, MCE has provided considerable evidence of a policy or practice by the Corps to improperly withhold non-agency documents related to pending Section 404 permits, and the Corps has offered scant evidence to rebut that showing. The Court can reasonably draw no other conclusion than that the Corps follows a policy or practice of unlawfully applying Exemption 5.

---

pending permit application. *See* Pl.'s MSJ at 9 n.4. For whatever reason, the Corps does not address that request in its briefing. And nothing in the record describes that request, what it specifically sought, what was released, and on what basis. Without more, Plaintiff's mere mention of that instance in a footnote does not raise a "genuine" dispute of material fact, in light of the considerable evidence provided by MCE that the Corps employed a consistent practice of improperly applying Exemption 5.

Accordingly, MCE is entitled to summary judgment on its claim that the Corps maintains a policy or practice that violates FOIA.

### B. Appropriate Remedy

MCE seeks two forms of equitable relief: (1) a declaratory judgment that the Corps follows a policy or practice of unlawfully withholding non-agency documents in pending Section 404 permit application files under Exemption 5 and (2) an injunction prohibiting the Corps from employing that policy or practice in the future. *See* Compl. ¶¶ 63–64.

Given the Court's conclusion that the Corps has employed the above policy or practice in violation of FOIA, MCE is, at a minimum, entitled to a declaratory judgment. MCE represents that it will continue to file FOIA requests seeking those types of documents, *see* Navarro Decl. ¶ 6, and the Corps' adherence to the unlawful policy, despite multiple lawsuits and administrative appeals questioning its validity, at the very least warrants that relief. *See Payne*, F.2d 837 at 494 ("The Secretary's inability to deal with the [agency] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification, entitle Payne to declaratory relief."); *id.* ("Payne has an undeniable right to the [records at issue,] . . . and it is entitled to a judgment in support of its claim."); *see also President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980) (noting that a declaratory judgment is appropriate when it will serve a useful purpose in clarifying the legal relations at issue or afford relief from the controversy giving rise to the proceeding). Indeed, the Corps does not appear to contest that a declaratory judgment is unwarranted upon a finding that it maintained an unlawful policy or practice. *See* Def.'s Opp'n at 7 (arguing only that "granting MCE prospective injunctive relief for future FOIA requests is not warranted").

MCE contends that an injunction is also necessary to ensure that the Corps will not improperly withhold application files for pending permits when MCE requests them in the

15

future. *See* Pl.'s MSJ at 19; Pl.'s Reply at 7–8. But the Corps insists that the record here, particularly Levins's and Bouchard's supplementary declarations affirming their positions on the proper application Exemption 5, shows that an injunction is unnecessary to ensure that it will not wrongfully deny MCE access to Section 404 permit application files in the future. *See* Def.'s MSJ at 12–13; Def.'s Opp'n at 7–12.

The Court agrees with the Corps on the propriety of injunctive relief. Even if an agency maintains an unlawful policy or practice such that a FOIA plaintiff is entitled to declaratory relief, the heightened remedy of injunctive relief is not necessarily appropriate. *See Muckrock*, 300 F. Supp. 3d at 136–37. "When injunctive relief is sought [on a policy-or-practice claim], 'the necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Judicial Watch*, 895 F.3d at 783 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Factors to be 'considered are the *bona fides* of the expressed intent to comply, the effectiveness of the discontinuance [of the violation] and, in some cases, the character of the past violations.'" *Id.* (quoting *W.T. Grant*, 345 U.S. at 633). "In the FOIA context, 'the court's prime consideration should be the effect on the public of disclosure or non-disclosure.'" *Id.* (quoting *Long v. U.S. Internal Revenue Serv.*, 693 F.2d 907, 909 (9th Cir. 1982)).

Weighing those factors here, the Court finds that injunctive relief is not warranted. Both Levins and Bouchard have affirmed in multiple declarations that the current position of their districts is that Exemption 5 does not apply to non-agency records in Section 404 permit application files. *See* Levins Decl. ¶¶ 5–6; Bouchard Decl. ¶ 12. Further demonstrating the Corps' good-faith efforts to comply with FOIA, when MCE questioned whether Levins's and Bouchard's initial declarations sufficiently addressed MCE's dispute over how the Corps had

been employing Exemption 5, both filed supplemental declarations clarifying their districts' positions that the specific documents MCE identified in the complaint are not exempt under Exemption 5. *See* 2d Levins Decl. ¶¶ 3–5; 2d Bouchard Decl. ¶¶ 3–5.[5] And while they cannot speak to the other three Corps districts in Missouri, absent any suggestion to the contrary, the Court assumes that those districts will also comply with the judgment of the Court. *See Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 874 F.3d 287, 293 (D.C. Cir. 2017) ("A government defendant is presumed to adhere to the law declared by the court.").

Furthermore, in the most recent instance in which MCE requested records relating to a pending application—MCE's FOIA request filed on March 10, 2018, and amended on March 26—the Corps did not apply Exemption 5. *See* Pl.'s Ex. D at 7–13. To be sure, this response

---

[5] The parties also dispute whether Levins's and Bouchard's assurances implicate the Court's jurisdiction over MCE's policy-or-practice claim. MCE contends that the Corps' has made a "de facto" mootness argument, and it counters that the Corps' corrective actions, under the doctrine of voluntary cessation, cannot render MCE's claim for equitable relief moot. *See* Pl.'s MSJ at 11–15; Pl.'s Reply at 4. The Corps, on the other hand, disclaims any attempt to argue mootness, and instead explains that its representations about actions taken by the St. Louis and Little Rock Districts "pertain[] to the merits of MCE's FOIA policy and practice claim[,] . . . not an Article III mootness argument." Def.'s Opp'n at 6. The parties, however, are simply disputing two sides of the same coin. As with the *existence* of a policy or practice, whether an agency has *abandoned* a policy or practice implicates both the survival of a case or controversy and the appropriateness of equitable relief. *See W.T. Grant*, 345 U.S. at 633; *see also Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C. Cir. 1987) (noting that a plaintiff has standing to seek declaratory relief to challenge a policy if he can establish the existence of the policy and a realistic probability that he will be subject to it again). And for the jurisdictional implications of the Corps' efforts, the Court has no trouble assuring itself, as it must, that it still has jurisdiction over MCE's claim. Voluntary cessation of a challenged practice will only moot a claim when a defendant shows that "there is no reasonable expectation" that the violation will recur and there are no lingering effects of the alleged violation. *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "The burden is a heavy one," and the Corps does not even try to argue that it meets that burden here. *W.T. Grant*, 345 U.S. at 633. Levins's and Bouchard's representations, however genuine, merely state positions that can be revisited at any time. While those representations are certainly relevant to the "appropriateness of granting an injunction," they are "not suffic[ient] to make [the] case moot." *Payne*, 837 F.2d at 492 (quoting *W.T. Grant*, 345 U.S. at 633).

occurred after MCE filed the complaint in this action, but it still suggests a willingness to adhere to the positions expressed by Levins and Bouchard. MCE, for its part, points to the prior lawsuits it filed in 2013 and 2014, arguing that the Corps' continued practice of improperly applying Exemption 5 even after settling those suits reflects a lack of good faith. *See* Pl.'s Reply at 7–8. But it does not argue that the Corps tried to skirt its obligations under those settlements. While those lawsuits help show that the Corps maintains a policy or practice of unlawfully invoking Exemption 5, and further that declaratory relief is warranted, they do not likewise suggest that it will continue a practice that the Court declares unlawful.

Ultimately, the Court finds "no record evidence to overcome the presumption of adherence [to the law declared by the Court] to which the [Corps] is entitled." *Muckrock*, 300 F. Supp. 3d at 137. The Court is mindful that its primary concern must be ensuring the proper release of documents to the public under FOIA. But the Court finds, in its discretion, that a declaratory judgment is adequate to ensure that the Corps does not continue its unlawful practice.

## IV. Conclusion

For all of the above reasons, the Corps' Motion for Summary Judgment, ECF No. 16, will be denied and MCE's Cross-Motion for Summary Judgment, ECF No. 17, will be granted. The Court will, by separate order, enter a declaratory judgment for MCE.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 28, 2019